51 CCPA

Application of I. William McLEAN, Jr., and Frederick W. Trader, Jr.

Patent Appeal No. 7101.

United States Court of Customs
and Patent Appeals.
June 11, 1964.

Watson, Leavenworth, Kelton & Taggart, John T. Kelton, New York City (George M. Richards, Grosse Pointe Woods, Mich., William H. Vogt III, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

McLean and Trader appeal from the board's affirmance of the rejection of all the claims of their patent application.[1]

The invention relates to poliomyelitis vaccine products and to a method for their preparation whereby the antigen from an original killed polio vaccine is adsorbed onto aluminum phosphate which is then separated from the mother liquor and resuspended in an aqueous medium. The liquid phase of the suspension constituting the final products is described as being substantially free of non-viral protein. The products are said to be more potent and more stable than the original vaccines from which the antigen was adsorbed.

Claims 10 and 16 read:

"10. Process for producing a poliomyelitis vaccine product which comprises adsorbing the poliomyelitis virus antigen from a killed aqueous poliomyelitis vaccine containing at least one strain of human poliomyelitis antigen onto aluminum phosphate, separating the aluminum phosphate with the adsorbed poliomyelitis antigen from the liquid and resuspending the aluminum phosphate-antigen precipitate in an aqueous medium.

"16. A poliomyelitis vaccine product comprising an aqueous suspension of at least one type of killed but antigenic poliomyelitis virus adsorbed on aluminum phosphate, the aqueous phase of said suspension being substantially free from non-viral proteins."

The references are:

Haas-Deutsche Med. Wochenschr, Vol. 80, pgs. 273–280, Feb. 1955.

Ericsson Nature, Sept. 7, 1946, Vol. 158 pgs. 350–351

Modern Drug Encyclopedia, 1952, 5th Ed., pg. 1140

Li et al., Proc. Soc. Exptl. Biol. & Med., Oct. 1954, pgs. 148–157

Modern Drugs, pg. 745, Jan. 1954

Freund Annual Review of Microbiology, 1947, pg. 295

---

1. Serial No. 505,548, filed May 2, 1955.

Haas discloses the use of aluminum hydroxide as an adjuvant[2] and states that its addition to a vaccine "is able to intensify many antigens in their immunization effect * * *." Haas also notes that with respect to polio vaccine the increased immunizing effect is not linearly proportional to the concentration of aluminum hydroxide.

Ericsson and Freund disclose that aluminum phosphate is an adjuvant for toxoids for the purpose of increasing immunologic responses.

Li et al. and the Modern Drug Encyclopedia references disclose the addition of a mixed vaccine of diphtheria, pertussis and tetanus antigens adsorbed on aluminum hydroxide to a live polio vaccine. The Modern Drugs reference discloses the adsorption of a mixed vaccine of diphtheria, pertussis and tetanus antigens on aluminum phosphate.

The board held that in view of the secondary references showing the use of aluminum phosphate as an adjuvant to increase immunologic response, it would be obvious to substitute aluminum phosphate for the aluminum hydroxide adjuvant of Haas.

Appellants contend that Haas is not properly considered as a reference because of their affidavit under Rule 131, and that their invention is not obvious from the cited prior art.

The first issue in this case is the sufficiency of the affidavit and the solicitor agrees that if the affidavit overcomes the Haas reference, the basis for the rejection is removed.

The affidavit of McLean and Trader discloses testing of their polio vaccine, prior to the date of the Haas reference, to the extent necessary to comply with the minimum requirements of the National Institutes of Health, Department of Health, Education and Welfare. The tests were conducted on the Rhesus monkey.

Although Haas discloses inoculation of human beings with "the poliomyelitis vaccine of the Behring Works" there is no indication that said vaccine contained aluminum hydroxide. A close analysis of Haas indicates that the Behring Works vaccine cannot be said to have necessarily contained any adjuvant. Thus in discussing "whether one can obtain adequate virus concentrations on the tissue cultures" Haas states

" * * * The following Table 2 gives an outline of the virus concentrations, determined on trypsinized Rhesus monkey kidney tissue, of the last 20 mixtures of poliomyelitis viruses from the *poliomyelitis-vaccine production of the Behring Works. * * *"

Subsequently, in discussing the Behring Works vaccine, the use of aluminum hydroxide as an adjuvant is disclosed and results of a series of tests on Rhesus monkeys inoculated with the Behring Works vaccine is given. The presence of the adjuvant in the Behring Works vaccine in those tests is clearly set forth.

In the absence of a clear disclosure of the inoculation of human beings with the polio vaccine containing an adjuvant, we find our decision in In re Wilkinson, 304 F.2d 673, 50 CCPA 701, dispositive here. Appellants having shown by affidavit that "they did everything done by [Haas] *prior* to the latter's publication date, they have overcome [Haas] as a valid ground of rejection." In re Wilkinson.

Since Haas is not properly a reference the issue of obviousness becomes moot.

The rejection of all claims is reversed.

Reversed.

---

2. "adjuvant: one that helps or facilitates: as a: an ingredient (as in a prescription or solution) that facilitates or modifies the action of the principal ingredient * * *." Webster's Third New International Dictionary unabridged 1961.